Spear, 0. J.
Two questions are presented. One relates to the sufficiency of the charges; the other to the action of the mayor upon them. The holding of the circuit court is rested upon the former consideration.
Section 2690m, Revised Statutes, gives authority to the mayor to appoint the board of supervisors, and also to remove. The latter authority is in these words: “For neglect of duty or misconduct in office, the mayor of such city may remove any member of said board.”
This language, taken by itself, may imply an arbitrary power of removal. But that the power is not wholly arbitrary is well settled in this state by the cases of The State v. Hawkins, 44 Ohio St., 98, and The State v. Bryson, same volume, 457. Nor can its exercise be lawfully attempted until substantial charges, involving neglect of duty or official misconduct, have been preferred. It is held in the former case, as applicable to a removal by the governor, that the charges must embody facts which, in judgment of law, constitute official misconduct, and no reason is perceived why the same strict test should not apply in the case of removal by a mayor. While it is true that the holding of office is not compulsory, and the citizen is at liberty to accept or decline as seems to him best, yet considerations of patriotism and public policy incline the disinterested citizen to accept, *513 and it is manifestly for the interest of the state that men of character should be found willing to fill public positions. Such citizens will be less likely to do so if they are to be- subjected to arbitrary removal, or their reputations put in jeopardy by removal based upon insufficient charges. The public interests do not require action which shall be unjust to a worthy officer, or which will unfairly smirch a good character, and yet the public interests do require prompt action in case of established inefficiency or corruption. And so our statutes have provided remedies as to removals which, while they do not lodge power in the removing authority which is absolutely arbitrary, do give power which partakes of that character.
In a ease under the statute in question the mayor is the sole judge of the weight and sufficiency of the evidence given at the hearing. If he hears a complaint of neglect of duty, or misconduct in office, upon adequate charges and, upon evidence tending to establish them by him adjudged sufficient, removes the officer, his action is practically final, since no appeal lies, nor can error be prosecuted. Hence the necessity, in justice and common fairness, of his being authorized to proceed only when charges have been made which embody facts that, in judgment of law, constitute neglect of duty or misconduct in office. As said by Mechem in his work on Public Officers, section 452: “The power of removal so conferred must be confined within the limits prescribed for it, and must be pursued with strictness. Hence it can be exercised only for the cause specified and in the manner and upon the conditions fixed.” See also Commonwealth v. Slifer, 25 Penna. State, 23. *514 And, with, equal propriety may it be added, that the finding and order should be so definite as to show, upon the face of them, that the power has been exercised according to law. This for the reason, among others, that the power exercised by the mayor is not judicial power and the presumptions which attach to the record of courts are not to be applied in the same liberal sense to the record of the mayor. In McGregor v. Supervisors, 37 Mich., 388, it is held by Cooley, C. J., that: “The removal from public office is a matter of serious consequence, and it is plain that all the facts which would justify it ought properly to be of record.”
The charges here are that Sullivan knew, or should have known, that the tangible property, real and personal, of the street railway company, subject to taxation, was $10,000,000. Yet he wilfully consented to approve the valuation of personal property at $835,230, and realty at $350,000, when he knew that the value of the said taxable property was not less than $10,000,000, with bad intent, etc. A similar allegation is made as to the property of the gas company.
But the board, acting as a board of equalization had, under the statutes, no duty to perform respecting real estate, its power of equalization being confined wholly to personal property, and why the confusing element as to real estate was incorporated in the charges must be left to conjecture. It so confuses the allegation that its meaning is fatally obscure.
There is no statement that Sullivan, or the board, undervalued the personal property, for there is no language equivalent to an averment that the personalty of the railway company was in *515 fact of higher value than $835,230. The valuation in gross appears by the charges to have been much too low. But it may be, for anything that these charges show to the contrary, that the undervaluation was wholly on the real estate. So that, as conclusion, every word in the charges as made may have been true as therein alleged, and yet no neglect of duty would be shown.
The finding of the mayor is simply that “Sullivan has been guilty of neglect of duty.” This finding^ being general, cannot be extended by implication to involve a conclusion more comprehensive or specific than the language of the charges. And this, as we have found, means only that as to the whole property there was undervaluation. In ■other words, the legal meaning of the finding and order is, that, in the judgment of the mayor, the defendant was guilty of neglect of duty because he had permitted undervaluation of the property in gross, and cannot be held equivalent to a finding that he had been so guilty with respect to that part only of the property of which the board had jurisdiction. It seems to us manifest that, considering the arbitrary character of the power brought into exercise in this case, the charges were too indefinite to justify a trial, and that, unaided by a specific finding showing in what the neglect of duty consisted, the entire record is not sufficient to support an order of removal.
Upon the other branch of the case, it will be noted that the answer avers that at the trial “Not a word of evidence tending to sustain the truth of the facts alleged in said charges, or either of them, was adduced or heard by said mayor, and that no statement or information of any personal or official knowledge of the mayor, of any kind, tending to *516 substantiate or prove the facts alleged in said charges, or either of them, was made or communicated to this defendant.” It will be further noted that, in his order, the mayor recites that “I find from the evidence and also from the facts within my personal knowledge, ” etc. As stated elsewhere, the power given the mayor is not judicial within the meaning of the constitution, yet, as already found, it is not to be exercised arbitrarily; that is, a hearing is to be given the accused, and he is to have the opportunity to refute what is adduced against him. So that, it would not be a proper exercise of power for the mayor to determine the truth of a charge on his own personal knowledge without making that publicly known, and offering the opportunity above alluded to. If the averment that not a word of evidence tending to sustain the truth of the facts alleged was adduced or heard by the mayor, etc., is to be taken as an averment that no testimony at all was heard, but that the mayor’s finding rested entirely on facts within his personal knowledge, uncommunicated, and it is insisted by counsel for defendant in error that such is its meaning, then clearly, upon this ground, also, should the mayor’s order be held invalid. The majority of the court, at least, inclines to regard the legal effect of the averment as a conclusion of law merely; that is, that in the opinion of the pleader the evidence did not tend to sustain the truth of the charges, and that whatever statement the mayor may have made of personal knowledge did not tend to substantiate the facts alleged. The decision, therefore, is rested upon the first proposition.

Jvdgment affirmed.

Minshall, J., dissents.